Erie Municipal Airport Authority, Appellant, *v.* Automation Devices, Inc., Appellee.

Argued May 10, 1974, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*William G. Sesler,* for appellant.

*Ted J. Padden,* with him *Quinn, Gent, Buseck & Leemhuis, Inc.,* for appellee.

OPINION BY JUDGE CRUMLISH, JR. IN SUPPORT OF REVERSAL, September 20, 1974:

This is an appeal from a decision and order of the Court of Common Pleas of Erie County. The Erie Municipal Airport Authority (Authority) commenced an action in assumpsit against Automation Services, Inc. (Appellee) seeking to collect an "airport users fee." The Court of Common Pleas dismissed the action, and this appeal followed.

The gravamen of this appeal revolves around a special meeting of the Authority held January 27, 1972, at which time a resolution imposing an airport users fee on privately owned and operated aircraft was adopted.[1] On January 25, 1972, the managing director of the Erie International Airport posted notice of a special meeting of the Authority on the main entrance door of the terminal building to be held on January 27, 1972, in the Erie Maennerchor Club. At this meeting the airport users fee was adopted.

Section 2 of the Act of June 21, 1957, P. L. 392, *as amended,* 65 P.S. §252 ("Right to Know Act") provides that "[e]very public meeting of a board shall be open to the public." There is no dispute that the Authority is a "board" as defined by Section 1(A) of the Right to Know Act, 65 P.S. §251(A), and is required to hold public meetings. *See Bogert v. Allentown Housing Authority,* 426 Pa. 151, 231 A. 2d 147 (1967). The lower court, in dismissing the Authority's action, reasoned

---

[1] In November 1970, the Authority had considered a resolution for the imposition of such a fee. Significant opposition caused Appellant to rescind the resolution.

that a meeting held at the Erie Maennerchor Club, a "private key club," does not qualify as a meeting "open to the public." We disagree.

First we must emphasize that we are in accord with the reasoning expressed by the now Chief Justice JONES, in *Bogert, supra,* when he wrote: "Unlike other public bodies, the members of the 'authorities' are appointed and not elected and are not *directly* responsible for their actions to the electorate. If the elected members of public bodies are to be subjected to public disclosure of their actions, how much more important that the appointed members of public bodies be required to make such disclosure." (Emphasis in original.) 426 Pa. at 158, 159, 231 A. 2d at 151. We cannot agree, however, considering carefully the record before us, that Appellee has proven that the January 27th meeting violated the Right to Know Act. Notice of the meeting was conspicuously posted on the entrance of the airport terminal's main door more than twenty-four hours before the special meeting, thus satisfying Section 3 of the Right to Know Act, 65 P.S. §253. The fact that the meeting was held in a "private" club, alone, does not constitute a violation of Section 2, 65 P.S. §252. Scrutinizing the record, we find no allegation that any interested party was barred due to the alleged exclusiveness of the Erie Maennerchor Club. Nor is there any evidence that the choice and use of a private club as the meeting place suggested that open participating and comment was unwelcome and/or interested citizens would be refused admission.[2] Public officers are presumed to have propery performed every duty and met every requirement necessary or essential to the validity of their acts. *Rosenblatt v. Pennsylvania Turnpike*

---

[2] The President of Appellee testified that he did not attend the meeting because he was not aware of it. As we had already indicated, appropriate notice had been given and his failure to know of it will not invalidate the resolution adopted at the meeting.

*Commission,* 398 Pa. 111, 157 A. 2d 182 (1959). Therefore, we think it was incumbent upon Appellee to at least show in this case that an interested party was turned away from the meeting in question. Of course, there may be instances where the site of meetings alone may be so confining and clandestine to per se mark the meeting as private rather than public. We do not believe this is the case here.

Furthermore, assuming *arguendo* that the resolution passed at the Erie Maennerchor Club was voidable because it was resolved at a meeting which did not comply with the Right to Know Act, the Authority cured this deficiency by ratifying the resolution at the regular rescheduled meeting on June 15, 1972, the public character of which Appellee does not contest. The law is well settled that a quasi-municipal corporation, such as the Authority, may ratify a voidable resolution or ordinance by subsequent validation, except in the limited situation where the original action was *ultra vires* or beyond the scope of is corporate powers. *Mateer v. Swissvale Borough,* 335 Pa. 345, 8 A. 2d 167 (1939); *The Aspinwall-Delafield Co. v. Borough of Aspinwall,* 229 Pa. 1, 77 A. 1098 (1910); *Kline v. Hampton Township,* 42 Pa. D. & C. 2d 49 (1967); 4 McQuillin, Municipal Corporations (3d Ed.) §1347. The instant airport users fee was promulgated pursuant to Section 4B.(h) of the Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, *as amended,* 53 P.S. §306B.(h), which enables the Authority to "fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties . . . ." Although Appellee by way of answer to the Authority's amended complaint challenged the fees contending that they were

non-uniform and discriminatory, it presented no evidence of record which would support a conclusion by the court below that the January 27, 1972 resolution adopting the fees was an *ultra vires* act incapable of ratification.

The lower court did not reach the question of the substantive validity of the initial users fee resolution. It merely dismissed the ratification as "perfunctory" and incapable of curing the defect of the original "non-public" meeting. We do not consider the ratification "perfunctory." The June 15, 1972 meeting at which the resolution was ratified was a regular rescheduled meeting of the Authority open to the public. The certified minutes of that meeting indicate that the January 27, 1972 resolution was presented and duly ratified by the Authority. That the ratification occurred after the instant action was filed and apparently in reaction to Appellee's defense that the original resolution violated the Right to Know Act does not alter its effectiveness. *See Mateer v. Swissvale Borough, supra.*

Appelle argues, however, that to permit a ratification of a resolution enacted in violation of the Right to Know Act would emasculate the intent of the Act of providing for public disclosure and discourse by permitting a public body to consider and approve controversial and unpopular resolutions at secret meetings and then subsequently ratify these actions in a hastily called meeting when its conduct is questioned. Acknowledging as a practical matter, this possibility, it is not supported by this record. Appellee can hardly complain that it was not given notice of the Authority's intent to impose a user's fee, or that it was denied the opportunity to present its views in opposition to the fees prior to consideration and resolution. The proposal was set in motion at the Authority's regular meeting on November 19, 1970. The proposed fee schedule was then mailed to the fixed based operators, among whom was

Appellee. When aircraft owners appeared at a meeting of the Authority in December of 1970 vigorously protesting the fees, the imposition of the fee schedule was postponed. The record further indicates that members of the Authority attended a meeting in late 1971 *at Appellee's place of business* to discuss further the merits of the proposed fees. Finally, seven days prior to the January 27, 1972 meeting, the Authority sent a letter addressed to aircraft owners in which it detailed and justified the fees.

Given this history of disclosure, amplification and attempted conciliation on the part of the Authority, we find Appellee's contention that the "spirit" of the Right to Know Act was violated to be without merit.

The opinion and order of the court below should be reversed.

Judges WILKINSON and ROGERS join in this Opinion.

---

OPINION BY JUDGE MENCER IN SUPPORT OF AFFIRMANCE:

I would adopt and affirm on the opinion of the Court of Common Pleas of Erie County, reported at 57 Erie County Legal Journal 1 (1973).

Judges KRAMER and BLATT join in this Opinion.